**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DERRICK QUINTERO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:09-cv-00106** |
| | ) | **Judge Sharp** |
| **RICKY BELL, Warden,** | ) | |
| | ) | **DEATH PENALTY CASE** |
| **Respondent.** | ) | |

**ORDER**

The petitioner, a prisoner sentenced to death by the State of Tennessee, initiated this action by

filing a petition for the writ of habeas corpus under to 28 U.S.C. § 2254.  Presently before the Court is the

petitioner's Motion to Expand the Record (ECF No.  87) pursuant to Rule 7 of the Rules Governing §

2254 Cases.  The respondent has filed a response in opposition to the motion (ECF No. 89).  With the

Court's permission, the petitioner filed a reply brief (ECF No. 92).  For the reasons set forth herein, the

motion is **GRANTED IN PART AND DENIED IN PART**.

**I.      Overview**

In his motion, the petitioner seeks to expand the record to include 26 different documents, which

may be grouped as follows:  (1) eight different affidavits by FBI Special Agent Mark Fedders, in each of

which Agent Fedders avers that the petitioner's fingerprint was found at the Settlers' residence, which

were disclosed to the petitioner on January 31, 2011 or April 18, 2012 in response to this Court's

discovery orders (Attachments A–H to the petitioner's motion); (2) notes from three different TBI witness

interviews conducted on July 29, 1988 and August 22, 2088 (Attachments I–K); (3) a TBI fingerprint

analyst's handwritten notes related to fingerprints found on a firearm (disclosed to the petitioner on

January 14, 2011 pursuant to this Court's discovery orders) (Attachment L); (4) the affidavit of trial

counsel regarding his attempts to procure *Brady* material from the prosecution prior to trial (Attachment

M); (5) the *Curriculum Vitae* and affidavit of Dr. John C. Brigham, an expert in the field of eye-witness

identification in courts (Attachments N, O); (6) lists of destroyed or missing trial exhibits, letters from court

clerks disavowing knowledge of the location of the missing evidence, and the affidavit of investigator

Jessica Johnson regarding her attempts to find the missing evidence (Attachments P–S); and (7) various mitigation evidence that was not presented at trial (Attachments T–Z).

The petitioner asserts that documents in Attachments A through M are relevant to Claim 3 in his petition, that confidence in the outcome of the guilt phase of the trial is undermined by the State's concealment of exculpatory evidence and presentation of false evidence or argument.

The petitioner asserts that the documents in Attachments N and O are relevant to his claim that the state court's admission of unreliable eyewitness identification against the petitioner was a denial of due process.

The petitioner asserts that the documents in Attachments P through S are relevant to his claim that the prosecution willfully lost or destroyed numerous items of potentially exculpatory evidence, in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988), and his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

The petitioner asserts that the documents in Attachments T through Z are relevant to his claim that his death sentence is undermined by counsel's ineffective assistance at the sentencing phase, in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

The petitioner's motion is premised on Rule 7 of the Rules Governing § 2254 Cases, which authorizes the Court to "direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." (ECF No. 87, at 1 (quoting Rule 7, Rules Gov'g § 2254 Cases).) The petitioner's position presumes a very broad construction of the term "relevant."

The respondent objects to the motion, arguing that (1) to the extent the petitioner seeks to expand the record to introduce new evidence pertaining to claims previously litigated in the state court, such expansion is precluded by the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011); and (2) to the extent the petitioner requests to expand the record as to claims not presented in the state court, the request should be denied because the petitioner has not argued or shown cause and prejudice to overcome the default.

In his reply brief, the petitioner argues that (1) *Cullen* concerns the propriety of conducting an evidentiary hearing under AEDPA, not Rule 7, whose test is merely "relevance"; (2) expansion of the

record under Rule 7 is generally used to assist the Court in determining whether an evidentiary hearing is necessary or proper; and (3) the petitioner has alleged cause and prejudice to overcome the default with respect to any claims that are procedurally defaulted, and the Court has not yet had the opportunity to address the merits of his claims.

## II.     Standard

Rule 7 of the Rules Governing Section 2254 Cases confers on the Court the authority to expand the record with materials relating to the petition.  The rule provides:

> (a)  In General.  If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition.  The judge may require that these materials be authenticated.

> (b)  Types of Materials.  The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

> (c)  Review by the Opposing Party.  The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7, Rules Gov'g § 2254 Cases.  According to the Advisory Committee Notes, the purpose of the rule is not only to enable the district court to dispose of petitions not dismissed on the pleadings without the time and expense of an evidentiary hearing, but also to assist the district court in determining whether an evidentiary hearing is warranted.  *Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977).  The decision whether to order an expansion of the record under Rule 7 generally falls within the sound discretion of the district judge.  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).

Rule 7 is thus analytically and procedurally distinct from 28 U.S.C. § 2254(e)(2), which addresses whether, or under what circumstances, federal habeas corpus courts may hold evidentiary hearings.  Section 2254(e)(2) provides:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

>> (A)  the claim relies on—

>>> (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

>>> (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

>> (B)  the facts underlying the claim would be sufficient to establish by clear and

convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Court concludes that the decision whether to grant an expansion of the record under Rule 7 is informed but not necessarily controlled by § 2254(e)(2), and that the expansion of the record for purposes of determining whether to hold an evidentiary hearing does not necessarily mean that the evidence in the expanded record must or even may be considered by the Court when it ultimately rules on the habeas petition.

With regard to *consideration* of new evidence, the habeas landscape has been dramatically altered by the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). In that case, a capital case, the district court held an evidentiary hearing on the petitioner's ineffective-assistance-of-counsel claim and granted relief, holding that the petitioner's counsel had been constitutionally ineffective at the sentencing phase of the trial. The Ninth Circuit affirmed, taking into consideration the new evidence presented in the district court, on the basis that the California Supreme Court's conclusion that counsel had not been ineffective was "contrary to, or involved an unreasonable application of, clearly established Federal law," under 28 U.S.C. § 2254(d)(1). The Supreme Court reversed, holding unequivocally that federal habeas courts' review under 28 U.S.C. § 2254(d)(1) of claims that were adjudicated on the merits in the state court is limited to the factual record that was before the state court. *Id.* at 1398. The Court stated that its holding did not render § 2254(e)(2) altogether superfluous, because § 2254(e)(2) "continues to have force where § 2254(d)(1) does not bar federal habeas relief. . . . At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Id.* at 1401 (citing *Williams v. Taylor*, 529 U.S. 420, 427–29 (2000). The Court concluded, in sum, that the Court of Appeals had erred in considering the new evidence presented to the district court in its review under § 2254(d)(1).[1]

## III. Conclusions of Law

### A. Attachments A–M

The holding in *Cullen* expressly applies only to claims that were considered on the merits in the state courts, and therefore does not pertain to the evidence the petitioner seeks to include in the record in

_____

[1] The Court also held that the Ninth Circuit had erred in finding, alternatively, that the California court had unreasonably applied clearly established federal law to his penalty-phase ineffective-assistance claim on the state-court record.

support of his claim of newly discovered evidence of *Brady* violations by the State.  Although technically defaulted, the petitioner argues that he has shown cause and prejudice for the default, claims the Court has no need to resolve at this stage.  The respondent's objection to the petitioner's motion as to the records in the petitioner's Attachments A through M is overruled, and the motion to expand the record to include those documents is therefore **GRANTED**.  The Court emphasizes that its holding is based on the motion to expand the record under Rule 7, and the Court reserves the right to exclude evidence from consideration in addressing the merits of the petitioner's claims, should the circumstances warrant.

### B.    Attachments N and O

The petitioner seeks to introduce Attachments N and O in connection with Claim 4 of his petition, in which he asserts that the state court committed constitutional error in determining that the admission of eye-witness identifications made under impermissibly suggestive circumstances violated the petitioner's right to due process, but that the error was harmless.  *See State v. Quintero*, 976 S.W.2d 121, 157–58 (Tenn. 1998).  In other words, this claim was fully litigated in the state courts, and the petitioner insists that the state court's adjudication of the claim is contrary to  or an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), and alternatively that it was based upon an unreasonable determination of the facts in light of the evidence before the state court.  28 U.S.C. § 2254(d)(2).

Under *Cullen*, this Court may not consider new evidence in addressing issues raised under 28 U.S.C. § 2254(d)(1).  Moreover, although *Cullen* did not concern claims under § 2254(d)(2), claims under that provision, by their very nature, require a showing that the state court's determination was unreasonable based on the evidence before it at the time it made its decision.  As a matter of logic, new evidence is not relevant to consideration of a claim under § 2254(d)(2).  That conclusion is bolstered by *Cullen*'s presumption that new evidence would be admissible in habeas proceedings only if it pertained to new claims and fell within the strictures of § 2254(e)(2).

The petitioner's motion to expand the record to include Attachments N and O, which consist of new evidence relating to Claim 4, is therefore **DENIED**.

### C.    Attachments P–S

The petitioner seeks to expand the record to include new evidence of the disappearance or loss of a substantial amount of "potentially exculpatory evidence"  (ECF No. 87, at 10), allegedly in violation of

the petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988). This evidence relates to Claim 14 in the habeas petition.

*Cullen v. Pinholster* does not control the question of whether the record may be expanded to include this evidence, because the claim does not fall under § 2254(d)(1). However, the habeas petition does not explain how the post-trial loss of "potentially exculpatory evidence" violates any of the petitioner's constitutional rights, nor does he explain the relevance of *Arizona v. Youngblood* to this claim. In *Youngblood*, the police negligently failed to preserve potentially exculpatory DNA evidence such that it was not available to the defendant at all. The Supreme Court held that, unless a criminal defendant can show bad faith on the part of the police, the failure to preserve potentially useful evidence does not constitute a denial of due process of law in violation of the Fourteenth Amendment. *Id.* at 57–58. The Supreme Court expressly declined "to read the 'fundamental fairness' requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58.

In the present case, unlike in *Youngblood*, the lost or destroyed evidence was available prior to and during trial; the petitioner could have but apparently failed to conduct any tests on it to determine whether it might have been exculpatory. The petitioner does not indicate in what way any of the lost items might have been favorable to him other than to state that "[f]orensic evaluation of [the lost] evidence from the crime scene would likely exonerate [the petitioner] by conclusively establishing the identi[t]y of the guilty parties." (ECF No. 16, at 57.) That contention is pure speculation. Moreover, the petitioner does not contend that the loss of the evidence resulted from the bad faith of any state actor. Because the plaintiff cannot show prejudice and does not allege bad faith, the plaintiff cannot prevail on this claim even if the Court presumes the petitioner's allegations to be true. Court cannot conceive of any reason to consider the proffered evidence or to conduct an evidentiary hearing on this question.

The motion to expand the record to include Attachments P through S in the record is therefore **DENIED**.

### D. Attachments T–Z

Attachments T through Z are documents that relate to the petitioner's claim that his trial counsel had in his possession a wealth of mitigating evidence but failed to present it during the sentencing phase

of his trial. This claim is procedurally defaulted, and the petitioner contends that he can show cause and prejudice to excuse the procedural default. It is premature at this stage in the proceedings to resolve these issues.

Expansion of the record to include Attachments T through Z is not barred by *Cullen*, and the Court is unable to determine at this stage whether they are admissible under § 2254(e)(2). The motion to expand the record to include Attachments T through Z is **GRANTED**, but the Court retains the prerogative to decline to consider the evidence in ruling on the merits of the petition, if the petitioner fails to establish a legitimate legal basis for the introduction of new evidence under § 2254(e)(2).

It is so **ORDERED**.

Kevin H. Sharp
United States District Judge